**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony SCIUTO, Defendant-Appellant.**

**No. 75–1957.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1976.

Decided March 19, 1976.

John A. Slevin, Peoria, Ill., Paul Marcus, Champaign, Ill., for defendant-appellant.

Donald B. Mackay, U. S. Atty., Springfield, Ill., Robert J. Kauffman, Asst. U. S. Atty., Peoria, Ill., Mitchell B. Dubick, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before SPRECHER and TONE, Circuit Judges, and PERRY, Senior District Judge.*

TONE, Circuit Judge.

In this appeal from an order revoking probation, we hold that the probationer's

---

* The Honorable J. Sam Perry, Senior District Judge of the Northern District of Illinois, is sitting by designation.

motion for disqualification of the district judge should have been granted. We also hold that when a probationer is not in custody pending the hearing on revocation *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), does not require a preliminary hearing. We reverse and remand for a new revocation hearing.

In 1972 Anthony Sciuto, a licensed firearm dealer, pleaded guilty to the offense of failing to record the sale of a firearm, a violation of 18 U.S.C. § 922(m). The court fined him $3,000, suspended imposition of sentence, and placed him on probation for three years with the following special condition:

> "Defendant shall cooperate with the government in the sale of all Title I guns within 90 days at public auction or to other dealers outside of his family, and sell all firearms in his home, including antiques, within 90 days. (Defendant to receive net proceeds of all said sales)."

The time for disposing of the firearms was extended on Sciuto's motion to February 20, 1973.

Shortly before the probationary period was to expire, Sciuto's probation officer filed a petition to revoke probation, alleging that Sciuto had not "entirely disposed of his firearms in the manner ordered by the Court," and had "furnished false information to the probation officer regarding disposition of his firearms" and "regarding his income during the period of probation." It is unnecessary to recount the evidence adduced at the ensuing revocation hearing. It is enough to say that there was evidence that all the guns were not sold "at public auction or to other dealers outside of [Sciuto's] family" within 90 days, as the court order required, and indeed that many were never sold in the manner required by the order; and that there was also evidence which would support findings that Sciuto made misrepresentations to his probation officer about selling all the guns and about money received from selling guns and did not disclose all the facts concerning these matters until after the probation revocation petition was filed.

That petition was filed on August 21, 1975, 10 days before the period of probation was to end. The court ordered the issuance of a warrant and set the petition for hearing on August 26. Defendant was arrested and immediately released on bond. He was interviewed about the subject matter of the petition on August 22 by the probation officer, who reported the substance of the interview to the court by letter. On August 25, defendant's attorney, John A. Slevin, obtained the agreement of the prosecutor to a continuance, but the court, in a three-way telephone conversation with both counsel, refused to allow a continuance.

At the commencement of the hearing on August 26, a different attorney appeared for defendant and filed a motion for disqualification of the judge on the ground of bias or prejudice, basing the motion on statements the judge had made in the telephone conversation the day before, which were set forth by affidavit. The court denied this motion and other motions, including a request for a preliminary hearing, and proceeded to conduct the revocation hearing, taking evidence over a period of several days. At the conclusion of the hearing the court entered an order revoking probation, and one month later defendant was sentenced to imprisonment for a term of five years.

### I. *The Motion To Disqualify*

The motion to disqualify is supported by two affidavits, one by Sciuto and one by the attorney Slevin. In Slevin's affidavit, he averred that in the telephone conversation the court has stated as follows:

> ". . . that he would not agree to a continuance because all that would be necessary would be to go in and make a record. . . . that although Affiant, as an Attorney could give his client the benefit of the doubt and believe him, [the court] had talked with . . . the Probation Officer, and that he was convinced that the Defendant had been dishonest and deceitful with the Probation Officer and in all probability with Affiant. . . . also . . . that his

[the court's] mind had been made up that the Defendant had violated the terms of his probation."

The other affidavit consists largely of Sciuto's recital of what his attorney had told him.

After reading the affidavits, the court made the following observations concerning their accuracy:

"Well, I might say this: that the only thing I find inaccurate in Mr. Slevin's affidavit is the statement that I advised him that my mind had been made up. This is inaccurate. Most of the rest of the material is accurate.

"I told him the purpose of the hearing was to hear the evidence and to give him—give the respondent—the opportunity to point out any defects in it, cross-examine witnesses, and so forth; that in keeping with the responsibility of the Court, the Court had talked about the matter at length with the probation officer who filed the petition for revocation preparatory to entering the order for a warrant and there is no use going into the matter of the affidavits any further.

"But they are generally accurate. I suppose Mr. Sciuto's is accurate in that all he states is his belief."

■ We believe 28 U.S.C. § 144 would have been applicable if petitioner had invoked it, since the affidavit must be taken as true for purposes of the motion, *Berger v. United States*, 255 U.S. 22, 32–33, 35–36, 41 S.Ct. 230, 232–233, 233–234, 65 L.Ed. 481, 485, 486 (1921), and stated facts sufficient to show bias or prejudice if true. Although that section was not mentioned in the motion papers or in the hearing before the District Court, the court was undoubtedly aware of it. The government in its brief assumed section 144 was involved. Sciuto's reply brief disclaims reliance on section 144, and instead argues that the judge was not an "independent officer," an "uninvolved person," "someone not directly involved in the case," as required by *Morrissey v. Brewer*, 408 U.S. 471, 485–486, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484, 497 (1972). Counsel stated in oral argument, however, that he wished to rely alternatively on section 144.

■ We need not decide whether section 144 was irrevocably waived in the reply brief. The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause. While a probation revocation proceeding need not include the full panoply of rights that attend a criminal prosecution, see *United States v. Francischine*, 512 F.2d 827, 829 (5th Cir. 1975); *United States v. Farmer*, 512 F.2d 160, 162 (6th Cir. 1975), due process of course requires a fair hearing, *United States v. Foster*, 500 F.2d 1241, 1244 (9th Cir. 1974). It has long been recognized that freedom of the tribunal from bias or prejudice is an essential element of due process. *E. g., In re Murchison*, 349 U.S. 133, 136–137, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955); *Whitaker v. McLean*, 73 App.D.C. 259, 118 F.2d 596 (1941); *Chessman v. Teets*, 239 F.2d 205, 216–217 (9th Cir. 1956), vacated on other grounds, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957); *cf. Morrissey v. Brewer, supra,* 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499. The significance of section 144 is that it bars any inquiry into the facts beyond the face of the affidavit. *Berger v. United States, supra,* 255 U.S. at 32–33, 41 S.Ct., at 232–233, 65 L.Ed. at 485. In the present case, however, that bar is unimportant because further inquiry confirms the existence of the alleged prejudice, if we accept, as we must, what the judge said about the Slevin affidavit.

The judge said in substance that although he had not said his "mind had been made up" concerning defendant's violation of a condition of probation, the affidavit was otherwise accurate. Perhaps the court's acknowledgment was overgenerous to the defendant, but we are not free to disregard the words used. We thus must treat as true the averment of the affidavit that the judge said he was "convinced," based on an *ex parte* conversation with the probation officer, "that the Defendant had been dishonest and deceitful with the Probation Officer and in all probability with" defend-

ant's own lawyer. If this was true, the court prejudged an issue of critical importance to the determination of whether to revoke probation.

■ Prejudgment based on a prehearing *ex parte* communication is as unfair when the communication comes from a probation officer, who is an officer of the court, as when it comes from some other source. In receiving the reports from the probation officer for which the statute provides, 18 U.S.C. §§ 3653, 3655,[1] the district judge must be circumspect. When a report contains information about conduct that may be cause for revocation of probation, he must exercise great care not to treat that information as proof. In deciding whether to issue a warrant or a rule to show cause when a petition to revoke probation is presented, he must be careful to decide only the issue of probable cause for proceeding with the revocation inquiry, which is properly before him, and not the merits of the case, which are not. If information in a report unavoidably causes him to prejudge an issue of fact bearing on revocation, he must disqualify himself. In supervising probation the judge must constantly remember that he may one day be cast in the role of trier of fact in a revocation proceeding, and that in that event he will be required to disqualify himself unless he has refrained from prejudgment.

Because the record in this case shows that the District Court prejudged an issue on which the decision to revoke probation may have turned, the order revoking probation must be reversed and the case remanded for a new hearing before another judge.

## II. *The Demand for a Preliminary Hearing*

■ Since the case is remanded for further proceedings, we must also consider Sciuto's argument that he was entitled to a preliminary hearing for the purpose of determining probable cause. We reject that argument because he was not held in custody to await the revocation hearing. *Gagnon v. Scarpelli, supra,* and the decision on which it is based, *Morrissey v. Brewer, supra,* prescribe a two-stage procedure for parole and probation revocation: a preliminary hearing on whether there is probable cause to believe the terms of release were violated, and a subsequent final hearing on the merits. In those cases, however, the respondents were held in custody until the revocation hearing. The reason for requiring a preliminary hearing was that the conditional liberty of a probationer or parolee, like the more complete liberty of others, cannot constitutionally be infringed without probable cause. This reason for requiring a preliminary hearing is not present when, as here, the probationer is not held in custody to await the revocation hearing. *United States v. Tucker,* 524 F.2d 77 (5th Cir. 1975); *United States v. Strada,* 503 F.2d 1081, 1084 (8th Cir. 1974); *United States v. Langford,* 369 F.Supp. 1107 (N.D.Ill.1973).

■ It is also contended that a preliminary hearing is needed to provide the probationer with notice of the specific charges and as an aid to discovery.[2] A

---

1. The original Probation Act of March 4, 1925, 43 Stat. 1259, was said to have contemplated "close supervision of the probationer, and systematic reports submitted to the court." *United States v. Nix,* 8 F.2d 759, 760 (S.D.Cal.1925). The present statute, 18 U.S.C. §§ 3653, 3655, retains essentially the same language, requiring the probation officer to report "[w]hen directed by the court" concerning a probationer's conduct while on probation (§ 3653), but also making it one of his duties to "keep informed concerning the conduct and condition of each probationer under his supervision and . . . report thereon to the court placing such person on probation" (§ 3655). In some districts, at least, probation officers do not routinely submit reports to the court unless specifically directed to do so.

2. We are referred to a passage in Y. Kamisar, W. LaFave & J. Israel, *Modern Criminal Procedure,* 980 (1974), in which the authors suggest several other reasons that preliminary hearings are needed in parole revocation proceedings. For the most part these reasons are inapplicable to probation revocation proceedings: Unlike the parolee, the probationer is entitled to bail, and therefore will not necessarily be incarcerated at a place distant from the scene of the alleged offense; and in a probation revocation hearing the evidence is not presented by a layman to a lay tribunal.

similar argument was rejected in *Strada*, 503 F.2d at 1084. A defendant's right to reasonable notice of the nature of the charged violation and an opportunity to meet the evidence offered against him can be satisfied by means other than a preliminary hearing. We need not review the adequacy of the means employed in this case, since a new hearing must be held, and defendant has had the benefit of a full preview of the government's evidence in the hearing already held.

### III.  *Other Contentions*

Sciuto also argues that he was denied due process because the probation revocation proceedings were not initiated within a reasonable time after the alleged violations. Whether the delay was unreasonable depends upon whether Sciuto deceived the probation officer. There is evidence sufficient to support a finding that he did, and if the court so finds on remand, the delay is chargeable to Sciuto.

Sciuto also argues that the evidence failed as a matter of law to establish that he violated the conditions of his probation. We think the evidence was sufficient to support a finding that Sciuto knowingly violated a condition of his probation and furnished false information to the probation officer. The rest is for the trier of fact upon a new hearing.

We need not consider Sciuto's final contention, which is that the sentence is so severe as to constitute an abuse of discretion. If the district judge who hears the case on remand decides that probation should be revoked, he will impose a new sentence based on his findings.

Reversed and remanded.